# PLILER, WARDEN v. FORD

No. 03–221.   Argued April 26, 2004—Decided June 21, 2004

226

Paul M. Roadarmel, Jr., Deputy Attorney General of California, argued the cause for petitioner. With him on the briefs were Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Donald E. De Nicola, Deputy Attorney General, and Kenneth C. Byrne, Supervising Deputy Attorney General.

Lisa M. Bassis, by appointment of the Court, 540 U. S. 1216, argued the cause and filed a brief for respondent.*

JUSTICE THOMAS delivered the opinion of the Court.

Under Rose v. Lundy, 455 U. S. 509 (1982), federal district courts must dismiss "mixed" habeas corpus petitions—those containing both unexhausted and exhausted claims. In this case, we decide whether the District Court erred by dismissing, pursuant to Rose, a pro se habeas petitioner's two habeas petitions without giving him two particular advisements. Because we hold that the District Court's failure to provide these warnings did not make the dismissals improper, we need not address the second question presented, whether respondent's subsequent untimely petitions relate back to his "improperly dismissed" initial petitions.

---

*Briefs of amici curiae urging affirmance were filed for Federal Defenders in the Ninth Circuit by Maria E. Stratton, Mark R. Drozdowski, Frederic F. Kay, Quin A. Denvir, Barry J. Portman, Peter C. Wolff, Jr., Anthony R. Gallagher, Roger Peven, and Thomas W. Hillier II; and for the National Association of Criminal Defense Lawyers by Walter Dellinger, Pamela Harris, and David M. Porter.

I

On April 19, 1997, five days before his 1-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, would have run, respondent signed and delivered to prison authorities two *pro se* federal habeas corpus petitions. The first petition related to respondent's conviction for, among other things, conspiring to murder John Loguercio and attempting to murder Loguercio's wife; the second related to his conviction for the first-degree murder and conspiracy to commit the murder of Thomas Weed. Because the petitions contained unexhausted claims, respondent also filed motions to stay the petitions so that he could return to state court to exhaust the unexhausted claims. The Magistrate Judge gave respondent three options: (1) The petitions could be dismissed without prejudice and respondent could refile after exhausting the unexhausted claims; (2) the unexhausted claims could be dismissed and respondent could proceed with only the exhausted claims; or (3) respondent could contest the Magistrate Judge's finding that some of the claims had not been exhausted. App. 51–52; 81–82.

With respect to his petition in the Loguercio case, respondent chose the first option. With respect to the Weed case, respondent failed to respond to the Magistrate Judge. The District Court dismissed respondent's petitions without prejudice. In both cases, respondent proceeded by filing habeas corpus petitions in the California Supreme Court, which were both summarily denied. Respondent subsequently refiled his *pro se* habeas petitions in Federal District Court. The District Court, in both cases, dismissed the petitions with prejudice as untimely under AEDPA's 1-year statute of limitations, 28 U. S. C. § 2244(d), and denied respondent's motions for a certificate of appealability (COA). The Ninth Circuit consolidated respondent's motions for a COA, and then granted a COA on the question whether his federal habeas petitions were timely under § 2244(d). A divided panel

concluded that both of respondent's initial federal habeas petitions were timely filed and held that his later petitions related back to the initial petitions. *Ford* v. *Hubbard,* 330 F. 3d 1086, 1097 (2003).

Although the District Court correctly concluded that it did not have discretion to stay respondent's mixed petitions, see *Rose, supra,* at 522, the Ninth Circuit determined that the District Court could have acted on the stay motions if respondent had chosen the Magistrate Judge's second option—dismissal of the unexhausted claims—and then renewed the prematurely filed stay motions. Under the Ninth Circuit's view, the District Court was obligated to advise respondent that it could consider his stay motions only if he chose this route. 330 F. 3d, at 1099. The District Court's failure to inform respondent was, according to the Court of Appeals, prejudicial error because it deprived respondent of a "fair and informed opportunity to have his stay motions heard, to exhaust his unexhausted claims, and ultimately to have his claims considered on the merits." *Id.,* at 1100.

The District Court also committed prejudicial error, according to the Ninth Circuit, for failing to inform respondent that AEDPA's 1-year statute of limitations had run on both of his petitions and that, consequently, he would be barred from refiling his petitions in federal court if he failed to amend them or if he chose to dismiss the petitions without prejudice in order to exhaust the unexhausted claims. Under the Court of Appeals' view, the District Court "definitively, although not intentionally," misled respondent by telling him that if he chose the first option, the dismissal would be without prejudice. *Ibid.* The Court of Appeals concluded that respondent should have been told that, because AEDPA's statute of limitations had run with respect to his claims, a dismissal without prejudice would effectively result in a dismissal with prejudice unless equitable tolling applied. *Id.,* at 1101. According to the Court of Appeals, the District Court's error in this regard deprived respondent

of the opportunity to make a "meaningful" choice between the two options. *Id.*, at 1102.[1] We granted certiorari, 540 U. S. 1099 (2004).

## II

Under *Rose*, federal district courts must dismiss mixed habeas petitions. 455 U. S., at 510, 522. Subsequent to the Court's decision in *Rose*, Congress enacted AEDPA, which imposed a 1-year statute of limitations for filing a federal habeas corpus petition. See 28 U. S. C. § 2244(d)(1). The combined effect of *Rose* and AEDPA's limitations period is that if a petitioner comes to federal court with a mixed petition toward the end of the limitations period, a dismissal of his mixed petition could result in the loss of all of his claims—including those already exhausted—because the limitations period could expire during the time a petitioner returns to state court to exhaust his unexhausted claims. To address this, the Ninth Circuit has held that a district court may employ a stay-and-abeyance procedure. See *Calderon v. United States Dist. Court for Northern Dist. of Cal. ex rel. Taylor*, 134 F. 3d 981, 988 (1998). The stay-and-abeyance procedure involves three steps: first, dismissal of any unexhausted claims from the original mixed habeas petition; second, a stay of the remaining claims, pending exhaustion of the dismissed unexhausted claims in state court; and third, amendment of the original petition to add the newly ex-

---

[1] Finding it impossible to put respondent in the position he had occupied prior to the District Court's "erroneous dismissal" of his initial petitions, the Ninth Circuit concluded that Federal Rule of Civil Procedure 15(c)'s amendment procedures apply to "ensure that [respondent's] rights are not unduly prejudiced as a result of the district court's errors." 330 F. 3d, at 1102. Accordingly, it held that "a *pro se* habeas petitioner who files a mixed petition that is improperly dismissed by the district court, and who then . . . returns to state court to exhaust his unexhausted claims and subsequently re-files a second petition without unreasonable delay," may have his second petition relate back to the initial timely petition. *Ibid.* As explained above, we need not address whether the Ninth Circuit's decision on this ground was correct.

hausted claims that then relate back to the original petition. *Id.*, at 986.

In this case, the Ninth Circuit held that if a *pro se* prisoner files a mixed petition, the district court must give two specific warnings regarding the stay-and-abeyance procedure: first, that "it would not have the power to consider [a prisoner's] motions to stay the [mixed] petitions unless he opted to amend them and dismiss the then-unexhausted claims," 330 F. 3d, at 1092–1093, and, second, if applicable, "that [a prisoner's] federal claims would be time-barred, absent cause for equitable tolling, upon his return to federal court if he opted to dismiss the petitions 'without prejudice' and return to state court to exhaust all of his claims," *id.*, at 1093.

Without addressing the propriety of this stay-and-abeyance procedure, we hold that federal district judges are not required to give *pro se* litigants these two warnings. District judges have no obligation to act as counsel or paralegal to *pro se* litigants. In *McKaskle* v. *Wiggins*, 465 U. S. 168, 183–184 (1984), the Court stated that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure" and that "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." See also *Martinez* v. *Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U. S. 152, 162 (2000) ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out"). Explaining the details of federal habeas procedure and calculating statutes of limitations are tasks normally and properly performed by trained counsel as a matter of course. Requiring district courts to advise a *pro se* litigant in such a manner would undermine district judges' role as impartial decisionmakers. And, to the extent that respondent is concerned with a district court's potential to mislead *pro se* habeas petitioners, the

warnings respondent advocates run the risk of being misleading themselves.

Specifically, the first warning could encourage the use of stay-and-abeyance when it is not in the petitioner's best interest to pursue such a course. This could be the case, for example, where the petitioner's unexhausted claims are particularly weak and petitioner would therefore be better off proceeding only with his exhausted claims. And it is certainly the case that not every litigant seeks to maximize judicial process.

The second advisement would force upon district judges the potentially burdensome, time-consuming, and fact-intensive task of making a case-specific investigation and calculation of whether the AEDPA limitations period has already run or will have run by the time the petitioner returns to federal court. As the dissent below recognized, district judges often will not be able to make these calculations based solely on the face of habeas petitions. 330 F. 3d, at 1108. Such calculations depend upon information contained in documents that do not necessarily accompany the petitions. This is so because petitioners are not required by 28 U. S. C. § 2254 or the Rules Governing § 2254 Cases to attach to their petitions, or to file separately, state-court records.[2] See 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 15.2c, p. 711 (4th ed. 2001) ("Most petitioners do not have the ability to submit the record with the petition, and the statute and rules relieve them of any obligation to do so and require the state to furnish the record with the answer"). District judges, thus, might err in their

---

[2] There is one circumstance where nonindigent petitioners must furnish the court with portions of the record. See 28 U. S. C. § 2254(f) ("If the applicant challenges the sufficiency of the evidence . . . to support the State court's determination of a factual issue . . . , the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence"; "[i]f the applicant, because of indigency or other reason is unable to produce such part of the record," a court must direct the State to produce it).

calculation of the statute of limitations and affirmatively misinform *pro se* petitioners of their options.

Respondent nevertheless argues that the advisements are necessary to ensure that *pro se* petitioners make informed decisions and do not unknowingly forfeit rights. Brief for Respondent 27–32. Respondent reads *Rose* as mandating that "a prisoner be given '*the choice* of returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only exhausted claims to the district court.'" Brief for Respondent 25–26, 27 (quoting *Rose*, 455 U. S., at 510) (emphasis in brief). But *Rose* requires only that "a district court must dismiss . . . 'mixed petitions,' leaving the prisoner with the choice" described above. *Ibid.* In other words, *Rose* requires dismissal of mixed petitions, which, as a practical matter, means that the prisoner must follow one of the two paths outlined in *Rose* if he wants to proceed with his federal habeas petition. But nothing in *Rose* requires that both of these options be equally attractive, much less suggests that district judges give specific advisements as to the availability and wisdom of these options. As such, any advisement of this additional option would not "simply implement what this Court *already* requires." Brief for Respondent 27 (emphasis in original).

Respondent also relies heavily upon *Castro* v. *United States*, 540 U. S. 375 (2003). In *Castro*, we held that a federal district court cannot *sua sponte* recharacterize a *pro se* litigant's motion as a first § 2255 motion unless it informs the litigant of the consequences of the recharacterization, thereby giving the litigant the opportunity to contest the recharacterization, or to withdraw or amend the motion. *Id.*, at 377. *Castro* dealt with a District Court, of its own volition, taking away a petitioner's desired route—namely, a Federal Rule of Criminal Procedure 33 motion—and transforming it, against his will, into a § 2255 motion. Cf. *id.*, at 386 (SCALIA, J., concurring in part and concurring in judgment) ("Recharacterization . . . requires a court deliberately to override the *pro se* litigant's choice of procedural vehicle

for his claim"). We recognized that although this practice is often used to help *pro se* petitioners, it could also harm them. *Id.,* at 381–382. Because of these competing considerations, we reasoned that the warning would "help the *pro se* litigant understand . . . whether he should withdraw or amend his motion [and] whether he should *contest* the recharacterization." *Id.,* at 384 (emphasis in original). *Castro,* then, did not address the question whether a district court is required to explain to a *pro se* litigant his options before a *voluntary* dismissal and its reasoning sheds no light on the question we confront.

Therefore, we hold that district courts are not required to give the particular advisements required by the Ninth Circuit before dismissing a *pro se* petitioner's mixed habeas petition under *Rose.* We remand the case for further proceedings given the Court of Appeals' concern that respondent had been affirmatively misled quite apart from the District Court's failure to give the two warnings.

For the foregoing reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion because it is limited to the narrow question whether the notifications crafted by the Ninth Circuit must be given.

The propriety of the stay-and-abeyance procedure generally is not addressed. The District Court did not employ that procedure, nor did the Ninth Circuit hold that it must be applied in every case. There is, therefore, no need for us to pass on it in this case, and the Court properly avoids doing so. I note, however, that the procedure is not an idiosyncratic one; as JUSTICE BREYER describes, *post,* at 239 (dissenting opinion), seven of the eight Circuits to consider it have approved stay-and-abeyance as an appropriate exercise of a district court's equitable powers.

For the reasons given by the majority, *ante*, at 232–233, it is not incumbent upon a district court to establish whether the statute of limitations has already run before explaining the options available to a habeas petitioner who has filed a mixed petition. Nevertheless, if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate. This is a question for the Ninth Circuit to consider on remand. See *ante*, at 234.

JUSTICE STEVENS, with whom JUSTICE SOUTER joins, concurring in the judgment.

While I fully agree with the views expressed by JUSTICE GINSBURG, *post* this page, and JUSTICE BREYER, *post*, p. 237 (dissenting opinions), I am persuaded that the judgment entered by the Court—remanding to the Ninth Circuit to determine the propriety of equitable tolling—is both consistent with those views and correct. I therefore concur in that judgment.

JUSTICE GINSBURG, with whom JUSTICE BREYER joins, dissenting.

The three options the Magistrate Judge gave respondent, see *ante*, at 228, did not include the three-step stay and abeyance procedure described *ante*, at 230–231. Under that procedure: (1) unexhausted claims are dismissed from the federal petition; (2) exhausted claims are retained in federal court, but are stayed pending exhaustion in state court of the dismissed unexhausted claims; and (3) postexhaustion in state court, the original federal petition is amended to reinstate the now exhausted claims, which are then deemed to relate back to the initial filing.[1] The Court today does not "addres[s] the propriety of this stay-and-abeyance proce-

---

[1] The Ninth Circuit here allowed relation back of amendments although no pleading remained before the federal court. See *ante*, at 230, n. 1. In contrast, under the stay and abeyance procedure, the original habeas petition, although shorn of unexhausted claims, remains pending in federal court, albeit stayed.

dure." *Ante,* at 231.   But that unaddressed issue seems to
me pivotal.   If the stay and abeyance procedure was a choice
respondent could have made, then the Magistrate Judge
erred in failing to inform respondent of that option.   While
I do not suggest that clear statement of the options available
to respondent must be augmented by "advisements," *ante,*
at 234, I would not defer, as the Court does, the question at
the core of this case.[2]

Furthermore, as this Court recognizes, *ante,* at 228, re-
spondent filed his habeas petitions "five days before [the ter-
mination of AEDPA's] 1-year statute of limitations."   Thus,
any new petition by respondent would have been time barred
even before the Magistrate Judge dismissed respondent's
original petitions.   Given that undisputed fact, the Magis-
trate Judge's characterization of the dismissal orders as
"without prejudice" seems to me highly misleading.

Because the Court disposes of this case without confront-
ing the above-described ripe issues, I dissent.   Although my
reasons differ from those stated in the Ninth Circuit's opin-
ion, I would affirm the Ninth Circuit's judgment to the ex-

---

[2] A related question also postponed by the Court's opinion is whether
the solution in *Rose* v. *Lundy,* 455 U. S. 509 (1982), to a mixed petition—
dismissal without prejudice—bears reexamination in light of the one-year
statute of limitations imposed by the Antiterrorism and Effective Death
Penalty Act of 1996 (AEDPA), on the time to file federal habeas petitions.
See *Duncan* v. *Walker,* 533 U. S. 167, 182–183 (2001) (STEVENS, J., concur-
ring in part and concurring in judgment) ("[A]lthough the Court's pre-
AEDPA decision in *Rose* v. *Lundy* prescribed the dismissal of federal ha-
beas corpus petitions containing unexhausted claims, in our post-AEDPA
world there is no reason why a district court should not retain jurisdiction
over a meritorious claim and stay further proceedings pending the com-
plete exhaustion of state remedies." (citation omitted)); *Crews* v. *Horn,*
360 F. 3d 146, 154, and n. 5 (CA3 2004) (holding that both exhausted and
unexhausted claims "should be stayed," and noting that a stay, "as effec-
tively as a dismissal, . . . is a traditional way to defer to another court
until that court has had an opportunity to exercise its jurisdiction over a
habeas petition's unexhausted claims" (internal quotation marks omitted)).

tent that it vacated the District Court's dismissal of Ford's second petitions.

JUSTICE BREYER, dissenting.

I join JUSTICE GINSBURG's dissent. But I write separately to "addres[s] the propriety of" the Ninth Circuit's "stay-and-abeyance procedure." *Ante*, at 231 (majority opinion). That procedure would have permitted Richard Ford, the respondent, to ask the federal court to stay proceedings and hold his federal habeas petition (in abeyance) on its docket while he returned to state court to exhaust his unexhausted federal claims. Thus Ford would not have had to bring his federal petition again, after expiration of the 1-year limitations period. California's courts thereby could have considered his unexhausted claims without forcing him to forfeit his right to ask a federal court for habeas relief.

What could be unlawful about this procedure? In *Rose* v. *Lundy*, 455 U. S. 509 (1982), the Court, pointing to considerations of comity, held that federal habeas courts must give state courts a first crack at deciding an issue. *Id.*, at 518–519. It prohibited the federal courts from considering unexhausted claims. The Court added that, where a habeas petition is "mixed" (containing both exhausted and unexhausted claims), the federal habeas court should dismiss the petition. *Id.*, at 520. *Rose* reassured those prisoners (typically acting *pro se*), however, that the dismissal would not "unreasonably impair the prisoner's right to relief." *Id.*, at 522. That reassurance made sense at that time because the law did not then put a time limit on refiling. It thereby permitted a prisoner to return to federal court after he had exhausted his state remedies. *Id.*, at 520. Of course, the law prohibits a prisoner from "abusing the writ," but ordinarily a petitioner's dismissal of his mixed petition, his presenting unexhausted claims to the state courts, and his subsequent return to federal court would not have constituted an abuse.

Fourteen years after *Rose*, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA imposed a 1-year statute of limitations for filing a habeas petition. 28 U. S. C. § 2244(d)(1). One might have thought at first blush that the 1-year limitations period would not make much practical difference where an exhaustion-based dismissal of a mixed petition was at issue, for AEDPA tolls the limitations period while "a properly filed application for State post-conviction or other collateral review . . . is pending." § 2244(d)(2). In *Duncan* v. *Walker*, 533 U. S. 167, 181–182 (2001), however, this Court held that the words "other collateral review" do not cover a federal habeas proceeding. And that fact means that a *pro se* habeas petitioner who mistakenly files a mixed petition in federal court may well find that he has no time to get to state court and back before his year expires. Hence, after *Duncan*, the dismissal of such a petition will not simply give state courts a chance to consider the unexhausted issues he raises; it often also means the permanent end of *any* federal habeas review. *Ante*, at 230; see also *Duncan*, *supra*, at 186, 191 (BREYER, J., dissenting) (citing statistics that 93% of habeas petitioners are *pro se;* 63% of all habeas petitions are dismissed; 57% of those are dismissed for failure to exhaust; and district courts took an average of nearly nine months to dismiss petitions on procedural grounds). Indeed, in this very case—a not atypical scenario—the limitations period expired while the petition was pending before the District Court.

I dissented in *Duncan*, arguing that Congress could not have intended to cause prisoners to lose their habeas rights under these circumstances. 533 U. S., at 190. Although the majority reached a different conclusion, it did so primarily upon the basis of the statute's language. See *id.*, at 172–178.

Accepting the majority's view of that language, I nonetheless believe that the other considerations that I raised in *Duncan* support the lawfulness of the Ninth Circuit's stay-

and-abeyance procedure. That procedure recognizes the comity interests that *Rose* identified, and it reconciles those interests with the longstanding constitutional interest in making habeas corpus available to state prisoners. There is no tension between the two. It is thus not surprising that nearly every circuit has adopted a similar procedure. *E. g.*, *Crews* v. *Horn*, 360 F. 3d 146, 152 (CA3 2004) ("[V]irtually every other Circuit that has considered this issue has held that, following AEDPA, while it usually is within a district court's discretion to determine whether to stay or dismiss a mixed petition, staying the petition is the only appropriate course of action where an outright dismissal could jeopardize the timeliness of a collateral attack" (internal quotation marks omitted)); *Nowaczyk* v. *Warden*, 299 F. 3d 69, 79 (CA1 2002); *Palmer* v. *Carlton*, 276 F. 3d 777, 781 (CA6 2002); *Zarvela* v. *Artuz*, 254 F. 3d 374, 381 (CA2 2001); *Freeman* v. *Page*, 208 F. 3d 572, 577 (CA7 2000); *Brewer* v. *Johnson*, 139 F. 3d 491, 493 (CA5 1998); cf. *Mackall* v. *Angelone*, 131 F. 3d 442, 445 (CA4 1997); but cf. *Akins* v. *Kenney*, 341 F. 3d 681, 685–686 (CA8 2003) (refusing to stay *mixed* petitions). See also *Duncan*, 533 U. S., at 182–183 (STEVENS, J., concurring in part and concurring in judgment) ("[T]here is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies"); *id.*, at 192 (BREYER, J., dissenting) (noting "JUSTICE STEVENS' sound suggestions that district courts hold mixed petitions in abeyance").

I recognize that the *Duncan* majority also noted the importance of respecting AEDPA's goals of "comity, finality, and federalism." *Id.*, at 178 (internal quotation marks omitted). But I do not see how the Ninth Circuit's procedure could significantly undermine those goals. It is unlikely to mean that prisoners will increasingly file mixed petitions. A petitioner who believes that he is wrongly incarcerated would not deliberately file a petition with unexhausted claims in the wrong (*i. e.*, federal) court, for that error would

simply prolong proceedings. Those under a sentence of death might welcome delays, but in such cases deliberate misfiling would risk a finding that the filer has abused the writ and a consequent judicial refusal to hold the petition in abeyance. Moreover, a habeas court may fashion a stay to prevent abusive delays; for example, by providing a time limit within which a prisoner must exhaust state-court remedies. See, *e. g., Zarvela, supra,* at 381.

Nor does the Ninth Circuit procedure seriously undermine AEDPA's 1-year limitations period. That provision requires a prisoner to file a federal habeas petition with at least one exhausted claim within the 1-year period, and it prohibits the habeas petitioner from subsequently including any new claim. These requirements remain.

Given the importance of maintaining a prisoner's access to a federal habeas court and the comparatively minor interference that the Ninth Circuit's procedure creates with comity or other AEDPA concerns, I would find use of the stay-and-abeyance procedure legally permissible. I also believe that the Magistrate Judge should have informed Ford of this important rights-preserving option. See *ante,* at 236 (GINSBURG, J., dissenting). For these reasons, I respectfully dissent.