[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 6, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-11280

_____

D. C. Docket No. 03-00036-CV-5

TONY D. THOMPSON,

Petitioner-Appellant,

versus

HUGH SMITH, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 6, 2006)**

Before TJOFLAT and KRAVITCH, Circuit Judges, and JORDAN[*], District Judge.

KRAVITCH, Circuit Judge:

---

[*] Honorable Adalberto Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

The issue presented in this appeal is whether the appellant is entitled to equitable tolling in his federal habeas petition filed pursuant to 28 U.S.C. § 2254. After oral argument and a thorough review of the record, we hold that the district court erred in determining that equitable tolling did not apply, and accordingly, we reverse and remand with instructions for the district court to apply equitable tolling.

I.

Appellant Tony Thompson pleaded guilty to numerous Georgia state crimes and was sentenced to life imprisonment on March 26, 1998. On April 1, 1998, Thompson filed a pro se motion to withdraw the guilty plea, which the trial court denied on July 9, 1998. Thompson did not appeal that ruling and therefore his conviction and sentence became final on August 8, 1998. *See* O.C.G.A. § 5-6-38(a) (providing that notice of appeal must be filed "within 30 days after entry of the appealable decision or judgment complained of").

On September 21, 1998, Thompson filed his first pro se state habeas corpus petition, claiming: (1) he was denied effective assistance of counsel; (2) his guilty plea was involuntary and unknowing; (3) he was prejudiced by pretrial publicity; and (4) error(s) regarding the motion to withdraw his guilty plea. The state court

2

denied relief[1] and the Georgia Supreme Court denied certificate of probable cause on May 31, 2000.

On June 9, 2000, Thompson filed his first federal habeas petition, raising the same four claims he had raised in his state petition. On December 15, 2000, Thompson filed a motion for an evidentiary hearing, asserting that the "lower courts" never held a competency hearing; the district court denied the motion on January 3, 2001. On March 8, 2001, Thompson moved the court to amend his habeas petition to add a claim that he had been denied a competency hearing in the trial court. The magistrate judge granted Thompson's motion the following month and instructed the state to respond.

Before the state filed its response, on April 16, 2001, Thompson moved to dismiss the petition without prejudice so that he could exhaust his claims in state court. Thompson noted that he was pro se and "not competent to understand how to properly raise his claims," but believed, based on the state's response to his motion for an evidentiary hearing, that his competency claim had not been exhausted. On April 23, 2001, the state filed its response to Thompson's motion to amend, asserting that although Thompson's fifth ground was new, it would be

_____

[1] Thompson also filed a "motion for new trial" in order to introduce new evidence in support of his ineffective assistance of counsel claim. The state court denied the motion on October 6, 1999, and apparently Thompson did not appeal this decision.

procedurally defaulted under Georgia's successive petition rule, *see* O.C.G.A. § 9-14-51, and therefore the court could find that Thompson had exhausted his state remedies. *See Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998). The district court granted the motion to dismiss on April 25, 2001.

Two days later, on April 27, 2001,[2] Thompson filed a "Letter of Concern," asking the court to review his claims in order to determine whether they had been properly exhausted, and if they were, requesting that the court not dismiss the petition. The district court construed the letter as a motion for reconsideration and denied it in a brief order on May 30, 2001.

On or about June 9, 2001, Thompson filed a "Motion to Void Conviction and Sentence Pursuant to O.C.G.A. 17-9-4 and Art. VI Supremacy Clause" in state court,[3] which denied relief. The Georgia Supreme Court initially denied Thompson's application for discretionary appeal, but eventually granted Thompson's separately filed notice of appeal and, on February 11, 2002, affirmed the trial court's decision, characterizing the motion as a motion to withdraw a

---

[2]Although Thompson's "Letter of Concern" was filed by the court on April 27, 2001, it was signed by Thompson on April 20, 2001.

[3]The precise date of Thompson's motion is impossible to divine from the record. Thompson refers to the motion repeatedly in his pleadings in the district court, but the motion itself is not part of the record. There is, however, a copy of the letter dated July 11, 2001, from the Ware County clerk's office indicating that the motion had been received and filed, and a copy of the Georgia Supreme Court's opinion, which stated that Thompson filed the motion in May 2001, *see Thompson v. State*, 559 S.E.2d 730 (Ga. 2002).

guilty plea and holding that the motion was untimely because it was filed after the term of court in which the plea was entered. The court denied Thompson's motion for reconsideration on March 11, 2002.

Meanwhile, on November 16, 2001, Thompson had filed his second state habeas petition. The state habeas court denied relief and the Georgia Supreme Court denied Thompson's certificate for probable cause on March 28, 2003. On April 26, 2003, it denied his motion for reconsideration.

On April 24, 2003, Thompson filed his second federal habeas petition, which is the petition at issue in this case. The state moved to dismiss the petition on the grounds that the petition was untimely and the filing of Thompson's first federal petition did not toll the statute of limitations. Thompson filed "objections" to the state's response, claiming that his petition was not time-barred because the magistrate judge in his first § 2254 case informed him that he had not exhausted his remedies.[4]

The magistrate judge recommended that the instant petition be dismissed as untimely. The magistrate determined that a total of 607 days had elapsed: 44 days between the time Thompson's conviction became final and the filing of the first state habeas petition; 533 days between the conclusion of the first state habeas

_____

[4]The state remarks that the magistrate judge never made such representations to Thompson, and the court cannot find any evidence of such representations in the record.

5

petition and the filing of the second state habeas petition; and 30 days between the end of the second state habeas action and the filing of the instant federal petition.[5]

Thompson filed several objections to the magistrate judge's recommendation, arguing, inter alia, that he was entitled to equitable tolling because the district court failed to warn him of the consequences of dismissing his first federal habeas petition and because he showed due diligence by returning to the state courts to file his June 9, 2001 motion to void conviction.

The district court adopted the magistrate judge's recommendation and dismissed the petition as untimely, finding that equitable tolling was unwarranted in Thompson's situation. The district court found that Thompson had not been diligent in prosecuting his first federal habeas petition and had been delinquent in returning to state court to exhaust his claims, although the district court did not mention Thompson's June 9, 2001 motion to void conviction. The district court then denied Thompson's motion for a certificate of appealability ("COA"). This court also initially denied Thompson's motion for a COA. Upon reconsideration, however, this court granted a COA on the issue of equitable tolling.[6]

---

[5]The magistrate judge found that the first federal petition did not toll the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). The magistrate judge made no mention of Thompson's June 9, 2001 motion to void conviction.

[6]The COA stated the issue as:
Whether appellant was entitled to equitable tolling of the statute of limitations for the time during which his initial § 2254 petition was pending where, less than one

6

II.

We review de novo a district court's legal decision regarding the applicability of equitable tolling. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002). "[A] determination regarding a party's diligence is a finding of fact that 'will not be disturbed unless clearly erroneous.'" *Id.* (quoting *Walters v. City of Atlanta*, 803 F.2d 1135, 1145 (11th Cir. 1986)).

III.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on all federal habeas corpus petitions.[7] 28

---

week before the one-year federal limitations period expired, the district court granted appellant's motion to voluntarily dismiss his first § 2254 petition without prejudice so that he could exhaust his state court remedies. *See Rodriguez v. Bennett*, 303 F.3d 435, 436-39 (2d Cir. 2002).
*Thompson v. Smith*, No. 04-11280-I (11th Cir. Sept. 28, 2004).

[7]28 U.S.C. § 2244(d)(1) reads:
A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

U.S.C. § 2244(d)(1). This time limit is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment." *Id.* § 2244(d)(2). The statute of limitations is not tolled, however, during the time that a federal habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

There is no question, and Thompson does not dispute, that Thompson's second federal habeas petition was statutorily time-barred when it was filed on April 24, 2003. Thus, the only issue before this court is whether equitable tolling should apply.

"It is by now clear in this Circuit that '[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.'" *Drew*, 297 F.3d at 1286 (quoting *Helton v. Sec'y for the Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001). "Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). "In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control." *Drew*, 297 F.3d at 1286-87. The petitioner is charged with the burden of establishing that equitable

8

tolling should apply. *Id.* at 1286; *Helton*, 259 F.3d at 1313-14.

Not belying its status as an extraordinary remedy, "this Court has rejected most claims for equitable tolling." *Diaz v. Sec'y for the Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004). For example, we have held that "[a]n attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling," *Steed*, 219 F.3d at 1300; *see also Helton*, 259 F.3d at 1313 (holding that an attorney's miscalculation or misinterpretation does not constitute extraordinary circumstances), and that an attorney's negligence was not a ground for equitable tolling where the petitioner's habeas petition was filed outside of the AEDPA statute of limitations because his attorney used ordinary mail service. *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999). These circumstances were not "extraordinary" because the ultimate failure to file within the statutory period was a direct result of decisions made and actions taken by the petitioner or his attorney. Having created the situations that caused their petitions to be time-barred, those litigants could not then avail themselves of the equitable power of the district court. *See id.*

But the doctrine of equitable tolling is not entirely without teeth. When outside forces, such as the courts themselves, act independently of the petitioner to prevent him from timely filing a petition for habeas corpus, then, provided that the

9

petitioner has exercised diligence, the district court may properly apply the doctrine of equitable tolling. In this circuit, we have held that "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." *Drew*, 297 F.3d at 1288. In *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), this court affirmed the application of equitable tolling because the petitioner did not learn of the denial of his state habeas application for eighteen months. *Id.* at 711. The court reasoned that the state court's shortcomings were "certainly beyond [the petitioner's] control," and because of his subsequent diligence, he was entitled to equitable tolling. *Id.*

The Supreme Court recently provided some guidance as to what qualifies for equitable tolling when it remanded a case back to the Ninth Circuit "for further proceedings given the Court of Appeals' concern that respondent had been affirmatively misled" when the district court instructed the petitioner that he had the option to dismiss his petition without prejudice even though any subsequent petition would have been beyond the statute of limitations. *Pliler v. Ford*, 542 U.S. 225, 234 (2004). In her concurrence, Justice O'Connor explained that "if the petitioner is affirmatively misled, either by the court or by the State, equitable

10

tolling might well be appropriate." *Id.* at 235 (O'Connor, J., concurring); *see also id.* (Stevens, J., concurring in the judgment).

When Thompson moved to voluntarily dismiss his first § 2254 petition in April 2001, he believed that he had a mixed petition including exhausted and unexhausted claims. Initially, Thompson's first federal habeas petition addressed the same four claims as his initial state petition, but in December 2000, he moved for an evidentiary hearing, asserting that the "lower courts" never held a competency hearing. The state responded that he had not previously raised that argument, and the district court denied the motion. Thompson then moved to amend his petition to add the ground that he had been denied a competency hearing. The court granted the motion and directed the state to file a response to the amendment. Before the state had a chance to respond, however, Thompson moved to dismiss his petition without prejudice in order to exhaust his state claims. He explained that he was "a pro, [sic] se litigant and [was] not competent to understand how to properly raise his claims in his previously [sic] habeas corpus filed in 1998" (the first state habeas proceeding) and appeared to be responding to the state's assertions in its response to his motion for an evidentiary hearing that he had not previously raised the ground involving his competency.

Before the district court ruled on the motion to dismiss, the state filed its

response to Thompson's motion to amend in which the state conceded exhaustion of the new claim in the amended petition, because although the claim had not been presented to the state courts, it would be procedurally defaulted under O.C.G.A. § 9-14-51 if it were raised in a second state habeas petition. *See Chambers*, 150 F.3d at 1327. Nevertheless, the district court granted Thompson's motion to dismiss and, pursuant to Federal Rule of Civil Procedure 41(a)(2), dismissed without prejudice Thompson's petition to allow him to exhaust his claims.

Two days after the district court dismissed the petition, Thompson filed a "Letter of Concern," specifically asking the district court to determine whether he had in fact exhausted all claims in his federal petition, and if it found that he had, to not dismiss. The district court construed the "Letter" to be a motion for reconsideration, and after "review and consideration," denied the motion in a brief order. Unfortunately, due to the amount of untolled time that had passed by the time the district court dismissed the petition, it would have been exceedingly difficult, if not impossible, for Thompson to file a second federal habeas petition within the AEDPA statute of limitations.[8]

---

[8]Contrary to the calculation in the COA, the statute of limitations may have already expired by the time the district court granted Thompson's motion to dismiss. It appears from the language of the COA that the court construed the filing date of Thompson's first state habeas petition to be September 11, 1998, which was the date it was signed. Adopting the language of the COA, a total of 363 untolled days would have elapsed when Thompson's first petition was dismissed, and Thompson would have had only two days to exhaust his claims in state court and then file his second federal petition. The magistrate, the district court, and both parties in their

12

We conclude that the district court erred when it denied Thompson's letter, which it characterized as a motion for reconsideration, because Thompson asked the court to make a legal determination regarding the question of exhaustion and the state conceded the exhaustion issue in a document already before the court. Although Thompson initiated the dismissal proceedings, he placed the issue of exhaustion squarely before the court when he submitted his "Letter of Concern." This court understands that "[t]he question whether a claim has been exhausted can often be a difficult one, not just for prisoners unschooled in the immense complexities of federal habeas corpus law, but also for district courts," *Walker*, 533 U.S. at 184 n.2 (Stevens, J., concurring in part and concurring in the judgment) (internal citation omitted), but the petitioner is still entitled to the correct resolution of the issue, especially where the opposite, and incorrect, conclusion leaves the petitioner time-barred and without remedy. Here, under Georgia law and as conceded by the state, Thompson's newest claim was exhausted. *See* O.C.G.A. § 9-14-51 ("All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. . . ."). It is well-settled that "[t]he Georgia statute restricting state habeas review of claims

---

briefs, however, construed the filing date to be September 21, 1998, which was the date the petition was received and filed by the state court. Using that date, 373 untolled days would have elapsed when the first federal petition was dismissed, and the statute of limitations would have already expired.

13

not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question 'could not reasonably have been raised in the original or amended [state habeas] petition.'" *Chambers*, 150 F.3d at 1327 (alteration in original).  Based on our review of the record, there was nothing to indicate that the claim in question could not reasonably have been raised in the original state petition.  The proper course of action for the district court, therefore, would have been to vacate the order of dismissal without prejudice and decide Thompson's first federal habeas petition on the merits.[9]  In our view, the combination of the above events constituted extraordinary circumstances.

In order to benefit from equitable tolling, the petitioner must show more than extraordinary circumstances; the petitioner also must demonstrate diligence.  The district court found that Thompson was not sufficiently diligent because: (1) Thompson's petition was pending in federal court for 320 days before it was dismissed; and (2) after the federal dismissal, 205 days passed before Thompson returned to state court to file his second state habeas petition on November 16,

---

[9]That the state court denied the new claim on the merits after Thompson returned to state court for his second state habeas corpus petition does not affect our conclusion.  This court is only concerned with how the district court should have ruled according to the information it had before it.

14

2001. The record clearly demonstrates, however, that Thompson diligently prosecuted his first federal habeas petition. He filed it a mere nine days after the conclusion of his first state habeas proceedings and the record shows that Thompson filed a near-constant stream of motions while the petition was pending. Moreover, Thompson moved to amend to add the new claim that he thought was unexhausted in March and then promptly moved to dismiss without prejudice his habeas petition; he was not simply sitting on a petition that he thought would be dismissed. Further, although time spent in federal court does not statutorily toll the AEDPA time limitation, it is illogical in the context of determining diligence to penalize a petitioner for the time that his habeas action is pending in federal court because the petitioner has no control over when the court will take action on his case.

In addition, the district court erred in its finding that Thompson was not diligent in returning to state court to exhaust his state remedies. The district court first erred by using the April 25, 2001 dismissal to begin calculating Thompson's return to the state courts. Thompson immediately filed his "Letter of Concern" with the district court after the dismissal, asking the court not to dismiss the petition if his claims were exhausted. The "Letter" showed Thompson's clear diligence, and had the motion been granted, it would have completely obviated

15

Thompson's need to return to state court. The correct date from which to calculate Thompson's diligence, therefore, was May 30, 2001, when the district court denied Thompson's motion for reconsideration.

Next, although Thompson did not file his second state habeas petition until November 16, 2001, the district court erred by failing entirely to consider the "Motion to Void Conviction and Sentence Pursuant to O.C.G.A. 17-9-4 and Art. VI Supremacy Clause." Thompson filed this motion, at the latest, by June 9, 2001, only ten days after the district court denied the motion for reconsideration. The motion did not statutorily toll the AEDPA statute of limitations because it was not "properly filed," *see Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1812 (2005), but it demonstrated Thompson's diligence in returning to state court. Mindful that the standard of review is clear error, we point out that, contrary to the state's assertions, there is ample documentary evidence in the record of the "Motion to Void Conviction."[10] Taking into account the "Motion to Void Conviction," the six-month gap between the dismissal from federal court and the filing of the

---

[10]Specifically, Thompson mentioned it in his second federal habeas petition during his discussion of the procedural history (R1-1), he discussed it in his "Brief in Support of Petition for Writ of Habeas Corpus" and included a docket number for the case (R1-3), and he submitted documents that he received from the state courts regarding the "Motion to Void Conviction" and a copy of the Georgia Supreme Court's opinion in his "Affidavit in Support of Petitioners [sic] Brief in Support for Writ of Habeas Corpus," filed June 20, 2003, and included references to those documents and their dates in his discussion of the motion (R1-10); he also referred to the motion again in his objections to the magistrate judge's report and recommendation (R2-23).

16

second state habeas petition disappears, and Thompson's diligence is apparent. We conclude, therefore, that the district court committed clear error in finding that Thompson was not diligent.

## IV.

For the foregoing reasons, we **REVERSE** and **REMAND** with instructions for the district court to apply equitable tolling.