NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1231
_____

UNITED STATES OF AMERICA

v.

DOMINIC F. BROXTON,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-mj-01156-001)
District Judge:  Hon. Mark A. Kearney

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 9, 2016

Before:   JORDAN, GREENAWAY, JR., and RENDELL, *Circuit Judges*.

(Filed: November 16, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Appellant Dominic Broxton was found guilty at a bench trial of disorderly conduct

at a federal facility.  On appeal, he argues that he was denied due process because he did

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

not have the opportunity to call witnesses, cross-examine adverse witnesses, and introduce documents into evidence.  Because Broxton did not preserve his objections, we review his claims for plain error, and, since there was no plain error, we will affirm his conviction.

## I.      Background

### A.      Factual Background

On July 4, 2015, Broxton and Roberto Amaro got into a fight while working as security officers at the IRS building in Philadelphia, Pennsylvania.  The altercation started when Amaro approached Broxton and accused him of stealing items from Amaro's locker.  Amaro then went to the officers' locker room and began looking through Broxton's locker.  Broxton followed, and used his phone to record Amaro's actions.  When Broxton ignored Amaro's requests to stop recording, Amaro knocked Broxton's phone to the ground and a fight ensued.  Neither man admitted to throwing the first punch.  Shortly after the fight started, other security officers arrived and broke it up.  A few hours later, both Amaro and Broxton were charged with disorderly conduct, in violation of 41 C.F.R. § 102-74.390.[1]

---

[1] 41 C.F.R. § 102-74.390 states:
All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that—
(a) Creates loud or unusual noise or a nuisance;
(b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
(c) Otherwise impedes or disrupts the performance of official duties by Government employees; or

**B.      Procedural Background**

On October 22, 2015, Amaro and Broxton were brought before a magistrate judge.[2]  The Court started by soliciting pleas from Amaro and Broxton; Amaro pled guilty and Broxton pled not guilty.  After accepting the pleas, but before starting Broxton's trial, the magistrate judge asked Amaro to explain what happened.  After Amaro recounted his version of events, the government asked him whether he had struck Broxton.  Amaro denied that he had.  At that point, the Court indicated that it wanted to hear the government's case against Broxton and that all witnesses should be sworn in, including "the ones who have already testified."  (App. at 16.)  The government's only witness was Officer Lemos, one of the security officers who was sent to break up the fight between Amaro and Broxton.  When the government finished questioning Lemos, the Court gave Broxton an opportunity to cross-examine the witness, inquiring, "Mr. Broxton, do you want to ask this officer any questions?"  (App. at 18.)  After

---

(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

[2] The charged violation constitutes a petty offense.  *See* 41 C.F.R. § 102-74.450 ("A person found guilty of violating any rule or regulation in this subpart … shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both."); 18 U.S.C. § 3559 (stating that a crime with a maximum term of imprisonment of 30 days is a Class C misdemeanor); 18 U.S.C. § 19 (defining a petty offense as a Class B misdemeanor, a Class C misdemeanor, or an infraction with a maximum fine no greater than that specified in 18 U.S.C. § 3571(b)(6) or (7)); 18 U.S.C. § 3571(b)(6)-(7) (specifying a maximum fine of $5,000 for a Class C misdemeanor); *United States v. Penk*, 319 Fed. App'x 733, 734 (10th Cir. 2009) (concluding that 41 C.F.R. § 102-74.390 is a petty offense).  A magistrate judge may try petty offenses pursuant to FED. R. CRIM. P. 58.

Broxton's first question was met with an objection,[3] Broxton started recounting his version of events.[4] When Broxton finished his statement, the government elected not to conduct a cross-examination.[5] At that point, the Court found Broxton guilty and assessed a fine of $200. Broxton, who apparently had not finished presenting his defense, asked the Court for permission to continue with his defense. The Court granted his request.[6]

---

[3] The transcript in this case suffers from numerous gaps and deficiencies and does not contain the full text of Broxton's question to Lemos. The exchange, as recorded in the transcript, states:

By Mr. Broxton:

Q: In your opinion when I told you (inaudible)?

MR. DIVINY [the Assistant United States Attorney]: I am going to object, Your Honor. Obviously that's a conclusion for Your Honor to make.

THE COURT: Yes, I have to draw that conclusion. You can tell me why it was so.
(App. at 18-19.)

[4] There does not appear to be a clear transition between the end of Lemos's cross-examination and the start of Broxton's testimony. There is no indication in the transcript that Lemos was dismissed or that the government decided to rest its case. Nevertheless, Broxton did not ask Lemos any additional questions.

[5] The government did interrupt Broxton's testimony to ask a clarification question, which Broxton answered before resuming his testimony.

[6] Once again, the transcript does not disclose the full exchange. The transcript states:

DEFENDANT BROXTON: Am I allowed to continue with my defense, (inaudible) policies and –

THE COURT: Oh, I thought you were finished.

DEFENDANT BROXTON: No.

4

Broxton then concluded by reviewing, and attempting to rebut, Amaro's version of events. When Broxton finished, the Court announced again that Broxton was guilty.

At that point, the government engaged in what appears to have been an *ex parte* sidebar with the judge. The sidebar discussion was not recorded. Following the sidebar, the Court asked Amaro whether he agreed with Broxton's version of events. Amaro indicated that he did not agree with Broxton, and the Court decided to "stick with" its original decision to find Broxton guilty. (App. at 24.)

Broxton appealed his conviction to the District Court, arguing that there was insufficient evidence to sustain his conviction. The District Court affirmed the conviction, concluding that it was adequately supported by the evidence. Shortly thereafter, Broxton appealed to this Court and argued, for the first time, that he was denied a meaningful opportunity to call witnesses, cross-examine witnesses, and introduce documentary evidence.

## II.    Discussion[7]

"[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v.*

---

THE COURT: Well, I will take care of [Amaro] and I will let you continue. (App. at 21-22.)

[7] The magistrate judge had authority to adjudicate the charge pursuant to 18 U.S.C. § 3231 (providing original jurisdiction to district courts over "all offenses against the laws of the United States") and 18 U.S.C § 3401(a) (indicating that "any United States magistrate judge shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district"). The District Court had jurisdiction to hear Broxton's initial appeal under 18 U.S.C. § 3402, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

5

*United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If all three conditions are met, and if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," then the court may exercise its discretion to correct the error. *Olano*, 507 U.S. at 732 (internal quotation marks and citation omitted). It is the defendant's burden to establish plain error. *Id.* at 734.

Broxton argues that the trial Court committed clear error by denying him the opportunity to call witnesses, cross-examine adverse witnesses, and present documentary evidence. We disagree. While due process requires that a defendant have an opportunity to confront adverse witnesses and present testimony, *see Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (explaining that, "as a minimum," due process requires that a defendant has an opportunity to present evidence and cross-examine adverse witnesses (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)), Broxton has not identified any place in the record where the magistrate judge prevented him from presenting evidence or examining a witness.

In fact, Broxton did not attempt to call any witnesses (other than himself) and did not make a request to enter any documents into evidence. Moreover, the record indicates that the magistrate judge explicitly asked Broxton if he wanted to cross-examine the government's only witness.[8] While it is true that the magistrate judge did not ask

---

[8] Broxton argues that he was not given the opportunity to cross-examine Amaro. But Amaro was not called as a witness against Broxton. While it is true that Amaro recounted his version of events, Amaro's statement was made as part of his plea colloquy – it preceded the start of the government's case against Broxton and involved unsworn

Broxton if he wanted to admit documents or call witnesses, that is not an obligation laid upon the Court. As we recognized in *Mala v. Crown Bay Marina, Inc.*, trial judges "[have] no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for [*pro se* litigants] that counsel would normally carry out." 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (quoting *Martinez v. Court of Appeal of Cal.*, *Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000))).

Because the trial judge did not prevent Broxton from putting on a defense, we cannot say that there was plain error in the proceedings leading to Broxton's conviction.[9]

## III. Conclusion

For the foregoing reasons, we will affirm Broxton's conviction.

---

testimony. This observation is confirmed by the fact that the District Court did not mention Amaro's statement when recounting the basis for Broxton's conviction.

To the extent that either of Amaro's statements was used against Broxton, we find that any error (whether plain or not) was harmless and did not seriously affect the integrity of the proceeding, as Officer Lemos's statement was sufficient, in and of itself, to show that Broxton engaged in disorderly conduct.

[9] Our conclusion that there was no plain error does not mean the proceedings at trial were flawless. In fact, several aspects of Broxton's trial were problematic. For example, the magistrate judge likely engaged in an *ex parte* side-bar communication with the government's attorney, did not clearly indicate when the court moved from one examination to the next, and did not clearly distinguish between Amaro's plea colloquy and the start of Broxton's trial. While these defects give us pause, and might explain why Broxton felt the proceedings were unfair, they do not qualify as plain error and do not provide a sufficient basis for us to overturn Broxton's conviction.