**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

PEGGY CHU,
                    Appellant,

                    v.

DEPARTMENT OF COMMERCE,
                    Agency.

DOCKET NUMBER
DC-1221-17-0172-W-1

DATE:  April 26, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Peggy Chu</u>, Alexandria, Virginia, pro se.

<u>Benjamin K. Ahlstrom</u> and <u>Jennifer Williams</u>, Alexandria, Virginia,
    for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to clarify the findings on exhaustion, the scope of the appellant's protected disclosures, and the contributing factor analysis and findings and to adjust the *Carr* factor analysis. We VACATE the finding that the agency met its burden of proving by clear and convincing evidence it would have relocated the appellant to a cubicle absent her protected disclosures. We otherwise AFFIRM the initial decision.

## BACKGROUND

The appellant is employed by the agency as an Information Technology (IT) Specialist, GS-2210-13. Initial Appeal File (IAF), Tab 64 at 5-6, Tab 24 at 4. She filed a complaint with the Office of Special Counsel (OSC), alleging that the agency moved her from a shared office to a cubicle, lowered her fiscal year (FY) 2015 performance appraisal, forced her to work overtime without pay, withheld a performance bonus and award, and suspended her for 1 day in reprisal for disclosing her officemate's harassing conduct that violated Government policies against disturbances and contractors' nonperformance that violated the Federal Acquisitions Regulations (FAR) and resulted in a gross waste of Government resources. IAF, Tab 45 at 7-17, Tab 70 at 116-22.

The appellant filed a Board appeal after OSC failed to resolve her complaint within 120 days, reasserting many of the claims that she raised before

OSC. IAF, Tab 1 at 840-58. During the adjudication of her case below, she alleged that her disclosure to the agency's Chief Investigator of the Workforce Relations Division (WRD) (formerly known as the Employee Relations Division) in February 2016—that she had worked over 2,000 hours of overtime without pay and with the knowledge of her supervisor—constituted a protected disclosure of a Fair Labor Standards Act (FLSA) violation. IAF, Tab 51 at 13, Tab 68 at 22, Tab 70 at 15-16. The appellant initially requested a hearing; however, through counsel, she withdrew her request. IAF, Tab 3 at 4, Tab 59 at 4.

After the close of the record, the administrative judge issued an initial decision based on the written record, finding that the appellant had established Board jurisdiction over her appeal, but denying her request for corrective action. IAF, Tab 63 at 1, Tab 73, Initial Decision (ID) at 1, 22. He found that the appellant made the following protected disclosures: (1) Government contractors violated the FAR; (2) the contractors' nonperformance constituted a gross waste of funds; and (3) she was denied overtime pay in violation of the FLSA. ID at 8-10. However, he found that the appellant's disclosures about her officemate were not protected. ID at 7. He further found that the appellant proved that her two protected disclosures about contractors' nonperformance were a contributing factor in her lowered performance rating and 1-day suspension, but not in the agency's decision to reassign her to a cubicle. ID at 11-12. He nevertheless denied the appellant's request for corrective action because the agency proved by clear and convincing evidence that it would have reassigned her to a cubicle, lowered her performance appraisal, and suspended her absent her contractor-related disclosures. ID at 12-22.

The appellant has filed a petition for review, arguing that the administrative judge erred in denying her request for corrective action. Petition for Review (PFR) File, Tab 7. She claims that all of her disclosures were protected and that the agency failed to prove by clear and convincing evidence that it would have lowered her performance rating, relocated her to a cubicle, or suspended her

absent her protected disclosures. *Id.* at 7-21. The agency has filed a response to the petition for review. PFR File, Tab 11.

## DISCUSSION OF ARGUMENTS ON REVIEW[2]

The appellant exhausted with OSC her disclosure that she was forced to work uncompensated overtime hours in violation of the FLSA.

Although the administrative judge found that the appellant made a protected disclosure that the agency violated the FLSA, he did not make any findings addressing whether she exhausted this claim with OSC. ID at 9-10. We turn now to consider in the first instance whether the appellant exhausted it with OSC.

The Board has jurisdiction over an IRA appeal if the appellant proves by preponderant evidence that she exhausted her administrative remedy before OSC and makes nonfrivolous allegations that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). The substantive requirements of exhaustion are met when an appellant has provided OSC with sufficient basis to pursue an investigation that might lead to corrective action. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The Board's jurisdiction is limited to those issues that have been previously raised with OSC. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7.

However, an appellant may give a more detailed account of her whistleblowing activities before the Board than she did to OSC. *Id.*; *Chambers*,

---

[2] The parties do not challenge the administrative judge's finding that the Board has jurisdiction over the appeal, and we decline to disturb that finding. ID at 5.

2022 MSPB 8, ¶ 10.  An appellant may demonstrate exhaustion through her initial OSC complaint, evidence that she amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations.  *Skarada*, 2022 MSPB 17, ¶ 7.  An appellant may also establish exhaustion through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the Board appeal.  *Chambers*, 2022 MSPB 8, ¶ 11.  Finally, the appellant must prove exhaustion with OSC by preponderant evidence, not just present nonfrivolous allegations of exhaustion.  *Id.*; *see* 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1201.57(c)(1).

The appellant alleged in her OSC complaint that she worked a significant number of overtime hours without pay.  IAF, Tab 45 at 14-15.  In additional submissions to OSC, she asserted that her supervisor was aware that she was working overtime.  IAF, Tab 2 at 22, 296, 356-68, 375.  In her submission to the Board, the appellant clarified that she disclosed that she was denied overtime pay to the Chief Investigator of the WRD during a meeting on February 25, 2016, concerning the agency's investigation into her apparent time and attendance discrepancies.  IAF, Tab 1 at 823-28, Tab 6 at 13.  The appellant also provided a written summary the Chief Investigator of the WRD produced detailing his February 25, 2016 meeting with the appellant.  These notes corroborate her claim that she made disclosures that her supervisor permitted her to work excessive hours.  IAF, Tab 1 at 823-28.  *Id.* at 824, 826-28.  The record reflects that the appellant provided these documents to OSC during its investigation of her whistleblower retaliation complaint.  IAF, Tab 23 at 16-17 (November 20, 2016 email providing OSC with additional documents related to her whistleblower complaint and requesting OSC to reconsider its stay decision); Tab 45 at 18-19 (September 15, 2016 email from OSC seeking additional information regarding the appellant's unpaid overtime claim), 20-21 (October 5, 2016 email denying the

appellant's stay request); *see Chu v. Department of Commerce*, MSPB Docket No. DC-1221-17-0018-S-1, Stay File, Tabs 1-2 (providing the OSC investigator with the February 25, 2016 meeting summary).[3]  Accordingly, we find that the appellant exhausted with OSC her claim that she disclosed to the Chief Investigator of the WRD that she was forced to work significant amounts of overtime without pay and with the knowledge of her supervisor.

The administrative judge found that a disinterested observer in the appellant's position could reasonably believe that her statements to the Chief Investigator alleging that she was required to work uncompensated overtime evidenced a violation of the FLSA.  ID at 9-10.  The parties do not question this finding on review.[4]

The administrative judge properly found that the appellant's disclosures about her officemate were unprotected, but erred in finding that all of her disclosures about contractors' nonperformance were protected.

*Disclosures concerning the appellant's officemate's disruptive behavior*

An employee discloses a gross waste of funds when she alleges that a more than debatable expenditure is significantly out of proportion to the benefit reasonably expected to accrue to the Government.  *Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 9 (2008).  On review, the appellant challenges the administrative judge's finding that her officemate's behavior was

---

[3] The appellant filed a stay request with the Board in October 2016, but an administrative judge dismissed the request as premature.  *Chu v. Department of Commerce*, MSPB Docket No. DC-1221-17-0018-S-1, Order Dismissing Stay Request at 1-2 (Oct. 14, 2016).

[4] We find it unnecessary to revisit this finding here.  The parties do not dispute this determination.  *See* 5 C.F.R. § 1201.115 (reflecting that the Board generally will consider only the issues raised on review).  As discussed below, we agree with the administrative judge that the agency met its burden to prove that it would have taken the actions at issue here absent the appellant's disclosure.  Therefore, any error is harmless.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).  However, we observe that according to a Standard Form 50 the appellant submitted below, she was designated as FLSA "exempt".  IAF, Tab 25 at 4.

too trivial to constitute a protected disclosure. PFR File, Tab 7 at 7-10. She asserts that she reasonably believed that she disclosed that her officemate violated 41 C.F.R. § 102-74.390, a Federal regulation prohibiting disturbances on public property, and that any violation is the basis for a protected disclosure, even if *de minimis*.[5] *Id.* at 9-10. Under 41 C.F.R. § 102-74.390, all persons are prohibited from "creat[ing] loud or unusual noise or a nuisance" or otherwise disrupting employees in the performance of their duties. A violation of that regulation carries a criminal penalty. 41 C.F.R. § 102-74.450. A disclosure of a violation of a criminal law is a disclosure of a law, rule, or regulation. *Scalera v. Department of the Navy*, 102 M.S.P.R. 43, ¶ 18 (2006).

We agree with the administrative judge that the appellant disclosed a trivial office dispute between she and her coworker. ID at 6-7 (citing *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) (concluding that disclosures of "trivial violations do not constitute protected disclosures.")) Specifically, the appellant alleged that her officemate was loud and disruptive when she used the speakerphone, held meetings, and gossiped and spoke in a foreign language with another coworker in their shared office. PFR File, Tab 7 at 7; IAF, Tab 70 at 6, 16. The appellant also described her coworker's behavior as "treat[ing] the office space as though it was her own," "us[ing] the office as a conference room," "belligerent," and "inconsiderate." IAF, Tab 70 at 6, 17, 60, 62, 82-84, 238-42. It appears that the appellant and her officemate generally disagreed about the use of the office space and the arrangement of office furniture. *Id.* at 17, 60, 62-63, 238-42. In fact, the appellant's officemate requested to be moved at one point due to the appellant's "offensive and disrespectful" conduct. *Id.* at 251-53.

---

[5] The parties do not dispute that 41 C.F.R. § 102-74.390 applied to the appellant's office. IAF, Tab 24 at 4, Tab 31 at 33-34; PFR File, Tab 7 at 8-9 (citing 41 C.F.R. §§ 102-2.10, 102-2.20). We make no finding on this issue, but we agree with the administrative judge's implicit finding that a reasonable person in the appellant's position would have believed the regulation applies. ID at 7.

We find that any reasonable person in the appellant's position could not believe her coworker's actions were the type of criminal conduct contemplated by the identified regulation. *Cf. Drake v. Agency for International Development*, 543 F.3d 1377, 1380-82 (2008) (finding that, based on the facts and circumstances of the case, it was reasonable for the appellant to believe that he had disclosed that his colleagues violated agency policy by being intoxicated while on duty); *see generally United States v. Broxton*, 666 F. App'x 149, 150, 153 (3d Cir. 2016) (affirming the criminal conviction, under 41 C.F.R. § 102-74.390, of a Federal security guard for creating a disturbance by engaging in a physical altercation with a coworker in the employee locker room).[6] Therefore, the appellant has shown no error in the administrative judge's finding that her disclosure was not protected.

*Disclosures concerning contractor wrongdoing*

As for the appellant's disclosures of contractors' nonperformance, they generally fall into two categories—disclosures of substantial nonperformance by a Government contractor, Phacil, and several disclosures about other contractors' more discrete performance issues. From August through October 2015, the appellant disclosed that Phacil should not be awarded an IT contract for FY 2016 because of its documented nonperformance. IAF, Tab 2 at 35-39, 49-160, Tab 70 at 125-28. At least as early as October 12, 2015, the appellant further disclosed that the agency was wasting money paying Phacil because it performed substantially below expectations and had serious product delivery delinquencies that significantly affected the agency's ability to fulfill its mission, especially regarding an applications system, which accounted for nearly 10% of the agency's annual operating budget. IAF, Tab 2 at 19-20, 164, Tab 8 at 4-11.

---

[6] While decisions of the U.S. Court of Appeals for the Federal Circuit are controlling authority for the Board, other circuit courts' decisions are considered persuasive, but not controlling, authority. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 15 n.12 (2016).

The appellant also disclosed that another contractor failed to maintain appropriate staffing levels as required by the contract and other contract employees failed to meet individual performance expectations. IAF, Tab 2 at 41-49. She contended that the contractors' failure to perform constituted a violation of FAR § 9.104-1 and § 52.249-13 and that the agency's failure to take remedial action for their nonperformance constituted a gross waste of funds.[7] IAF, Tab 23 at 4-7. The administrative judge did not distinguish the appellant's disclosures, finding instead that she "produced sufficient evidence to show that she reasonably believed that the contractors violated the FAR, and that the contractors' nonperformance resulted in a misuse of [G]overnment funds." ID at 9. This distinction is significant, as only the disclosures about Phacil are protected.[8]

Federal agencies generally may only award a competitive contract bid to a responsible contractor. 41 U.S.C. § 3703(c). Under FAR §§ 9.104-1(c) and 9.104-3(b), a prospective contractor is presumed to be "nonresponsible" if it "is or recently has been seriously deficient in contract performance." When the appellant made her disclosure, the agency had awarded Phacil the FY 2016 contract. IAF, Tab 8 at 7-8. Based on the appellant's expertise, observations, and confirmation from other management officials, it was reasonable for her to believe that Phacil's nonperformance was substantial enough such that the agency's decision to award Phacil the FY 2016 contract violated the FAR. IAF, Tab 8 at 4-11; *see Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996) (considering the appellant's asserted subject matter expertise in finding

---

[7] The FAR regulations are located in Title 48 of the Code of Federal Regulations.

[8] The administrative judge also erred in finding that the appellant reasonably believed that she disclosed a violation of FAR § 52.249-13. ID at 8-9. That provision, which concerns facilities contracts, was eliminated over 8 years before the appellant's disclosures. *Id.*; Federal Acquisition Regulations, 72 Fed. Reg. 27364-02, 27381, 27394 (May 15, 2007). The administrative judge's error was not harmful, as we have nevertheless found that the appellant reasonably disclosed a violation of the FAR on another basis. *Panter*, 22 M.S.P.R. at 282.

that she made a nonfrivolous allegation of gross mismanagement); *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994) (considering the appellant's expertise in finding that she made a nonfrivolous allegation of a gross waste of funds).

Further, it was also reasonable to believe that the agency was committing a gross waste of funds by paying millions of dollars for services it was not receiving due to Phacil's nonperformance and that its nonperformance affected a project that accounted for nearly 10% of the agency's operating budget.[9] IAF, Tab 3 at 7, Tab 8 at 4-11; *see, e.g.*, *Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶¶ 6, 10 (1998) (finding that the appellant made a nonfrivolous allegation that he had disclosed a gross waste of funds by disclosing that the agency spent $15,000 on a fuel management system that would provide no benefit to the Government); *cf. Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 10 (2007) (finding no protected disclosure of a gross waste of funds when the appellant failed to indicate the scale of the expenditure she claimed was improper). In contrast, the appellant could not reasonably believe that she was disclosing a violation of law, rule, or regulation, or a gross waste of funds by disclosing her concerns about other contractors' staffing issues and minor, discrete performance issues. *See Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶¶ 17-18 (2010) (finding that the appellant did not prove he reasonably believed he disclosed Government wrongdoing by disclosing that

---

[9] The appellant's disclosures—that agency officials ignored contract violations by failing to remediate Phacil's nonperformance—reveal wrongdoing on the part of the agency, as opposed to only identifying wrongdoing by a private Government contractor because Phacil's nonperformance implicated the Government's interest. *See Johnson v. Department of Health and Human Services*, 93 M.S.P.R. 38, ¶¶ 10-11 (2002) (finding that the appellant's disclosures of wrongdoing by a private Government contractor were protected because the identified wrongdoing implicated the Government's interest and reputation); *see also Covington v. Department of the Interior*, 2023 MSPB 5, ¶¶ 15-19 (finding that the Whistleblower Protection Enhancement Act of 2012 did not change the longstanding principle that a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Federal Government's interests and good name are implicated in the alleged wrongdoing).

contractors failed to fulfill their contractual obligations to maintain staffing levels).

<u>The appellant proved that her disclosure concerning contractor nonperformance was a contributing factor in the agency's decisions to lower her FY 2015 performance rating and to issue a 1-day suspension.</u>

The administrative judge found that the appellant proved that her disclosures of contractors' nonperformance, beginning in August 2015, were a contributing factor in the agency's October 2015 decision to lower her FY 2015 performance rating and October 2016 decision to suspend her for 1 day. ID at 10-12. Based on our modifications to the administrative judge's findings as to the appellant's disclosures, we further modify the initial decision to find that she proved that her protected disclosures about the agency's failure to act on Phacil's nonperformance were a contributing factor in those two personnel actions. We also vacate the administrative judge's finding that she proved contributing factor as to her disclosures concerning other contractors.

To prevail in an IRA appeal, an appellant also must prove by preponderant evidence that her disclosure was a contributing factor in a personnel action. 5 U.S.C. § 1221(e)(1); *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 19. To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the disclosure was one of the factors that tended to affect the personnel action in any way. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 43. One way to establish contributing factor is the knowledge/timing test. *Smith*, 2022 MSPB 4, ¶ 19. The appellant can satisfy the test by proving that the official taking the action had actual or constructive knowledge of the disclosure, and the action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*. The knowledge portion of the knowledge/timing test can be met with allegations of either actual or constructive knowledge. *Abernathy v. Department of the Army*,

2022 MSPB 37, ¶ 15. However, the knowledge/timing test is not the only way to prove contributing factor. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). The Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the officials taking the action, and whether these individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

The appellant's former supervisor rated the appellant's performance for FY 2015 as fully successful on October 9, 2015, and suspended her on October 3, 2016. IAF, Tab 5 at 4, Tab 31 at 33, 35-36. As previously noted, the appellant disclosed that Phacil should not be awarded an IT contract for FY 2016 and that the agency was wasting money on Phacil from August through October 2015. IAF, Tab 2 at 19-20, 35-39, 49-160, 164, Tab 8 at 4-11, Tab 70 at 125-28. Thus, the appellant has proven, under the knowledge/timing test, that her protected disclosures concerning the agency's FAR violation and gross waste of funds as to Phacil were contributing factors in the agency's decision to take both personnel actions. *See Abernathy*, 2022 MSPB 37, ¶ 15.

Regarding contributing factor as it relates to the appellant's move to a cubicle from her shared office, although the appellant raises other arguments on review as to her office move, she does not contend that the responsible officials—the Director of Program Management, the Director of the Workforce Management Division (WMD), and a Labor Relations employee—had knowledge of her protected disclosures regarding Phacil. PFR File, Tab 7 at 10-12; IAF, Tab 70 at 20, 22, 49. She also does not contend that they were influenced by anyone with knowledge of her protected disclosures. PFR File, Tab 7 at 10-12; IAF, Tab 70 at 20, 22-24, 47-53; *see Dorney*, 117 M.S.P.R. 480, ¶ 11 (explaining that an appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action).

As to non-knowledge/timing evidence, the agency provided strong evidence supporting its decision to move the appellant to a cubicle. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. Specifically, the WMD Director provided a declaration detailing the agency's efforts in resolving the dispute between the appellant and her officemate and explaining its decision to move her into a cubicle instead of into a single-occupancy office or another double-occupancy office with a different officemate. IAF, Tab 68 at 17-20. The WMD Director explained that WMD recommended to the Union President that the appellant be moved into a cubicle from her double office because the appellant's division was facing significant space limitations at the time and so no GS-13 employees were being provided with single offices, and further, because the appellant's statements and behaviors led the agency to believe that moving her into another double office with a different officemate would be futile. *Id*. Additionally, the WMD Director noted that although WMD made the recommendation that the appellant be moved into a cubicle, the final decision on the office assignment was made by the union. *Id.* at 18, 20.

Although the appellant reasserts that the decision to move her to a cubicle was retaliatory, she has not specifically disputed the agency's explanation for its decision on review. PFR File, Tab 7 at 15-16. Additionally, there is no evidence in the record that any of the appellant's whistleblowing disclosures were directed at any of the officials that were involved in the decision to move the appellant to a cubicle—the Director of Program Management, the WMD Director, and the Labor Relations Specialist—or that any of these officials had any motive to retaliate against the appellant. IAF, Tab 2 at 377-79, Tab 23 at 56-57, Tab 68 at 17-21, Tab 70 at 47-49, 75-76; *see Dorney*, 117 M.S.P.R. 480, ¶ 15. Accordingly, we agree with the administrative judge that the appellant has not proven that the agency moved her from a shared office to a cubicle in reprisal for her protected disclosures. ID at 11-12.

<u>The appellant proved that her disclosure of potential FLSA violations was a contributing factor in the agency's decision to issue the 1-day suspension.</u>

The administrative judge did not make specific findings addressing whether the appellant's February 25, 2016 FLSA disclosure was a contributing factor in the agency's October 2015 decision to lower her FY 2015 performance rating, the October 2016 decision to suspend her for 1 day, or the July 19, 2016 decision to move her from a double-occupancy office to a cubicle, and so we do so in the first instance.

The timing prong of the knowledge/timing test is met for the 1-day suspension and the move to a cubicle because the agency took those actions less than 1 year after the appellant made the disclosure to Chief Investigator of the WRD on February 25, 2016. IAF, Tab 1 at 823-28, Tab 2 at 377, Tab 31 at 33, 35-36, Tab 68 at 20; *see Abernathy*, 2022 MSPB 37, ¶ 15 (recognizing that personnel actions occurring within 1 to 2 years after the protected disclosures are sufficient to meet the timing portion of the test). However, because the appellant first disclosed the potential FLSA violations on February 25, 2016, after the October 2015 decision to lower her FY 2015 performance rating, the disclosure could not have contributed to the agency's decision to take that action. IAF, Tab 5 at 4; *see Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 26 (2007) (determining that a disclosure made after the personnel actions at issue could not have been a contributing factor in those personnel actions).

Regarding the knowledge prong of the test, as set forth in greater detail above, the only agency official the appellant alleged was aware of her disclosure was the Chief Investigator of the WRD.[10] IAF, Tab 1 at 823-28, Tab 70 at 63-64. The appellant also alleged that the Chief Investigator was involved in the suspension decision by assisting her former first-line supervisor with the

_____

[10] Although the appellant noted that her former first-line supervisor was aware that she often worked overtime hours, she did not allege that she made a protected disclosure of wrongdoing to her supervisor in connection with her overtime work, nor did she exhaust any such claim with OSC. IAF, Tab 70 at 30-31.

suspension proposal and decision and by coordinating the oral reply. IAF, Tab 23 at 17, 51, Tab 70 at 35, 65. Accordingly, we conclude, based on the knowledge/timing test, that the appellant proved that her disclosure of potential FLSA violations was a contributing factor in the decision to issue the 1-day suspension.

With respect to the decision to move her from an office to a cubicle, the appellant has not alleged that the Chief Investigator of the WRD played any role in that decision, nor has she alleged that any of the other agency officials responsible for that decision had knowledge of her FLSA disclosure. The appellant also has not alleged that any person involved in the cubicle move decision was influenced by the Chief Investigator—the only official with knowledge of the FLSA disclosure. *See Dorney*, 117 M.S.P.R. 480, ¶ 11. Further, as previously set forth in greater detail, the agency's reasons for moving the appellant to a cubicle were valid and there is no evidence that the appellant's FLSA disclosure was directed at any of the officials involved in the office move decision, and so the appellant failed to prove contributing factor based on non-knowledge/timing evidence.

In summary, we conclude that the appellant established that her February 25, 2016 disclosure of potential FLSA violations was a contributing factor in the agency's decision to issue the 1-day suspension, but it did not contribute to the decisions to lower the appellant's FY 2015 performance rating or to move her from a shared office to a cubicle.

<u>The agency proved by clear and convincing evidence that it would have lowered the appellant's performance rating and suspended her absent her protected disclosures.</u>

In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency

officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

> *We vacate the administrative judge's finding that the agency met its burden of proving that it would have relocated the appellant to a cubicle absent her protected disclosures.*

On review, the appellant alleges that the administrative judge erred in finding that the agency proved by clear and convincing evidence that it would have moved her to a cubicle absent her protected disclosures. PFR File, Tab 7 at 15-16. Given that we agree with the administrative judge that the appellant did not prove that her disclosures were a contributing factor in the agency's decision to move her to a cubicle, it is unnecessary to determine whether the agency proved by clear and convincing evidence that it would have taken the action at issue in the absence of her protected activity. ID at 11-12; *see Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 10. Accordingly, we decline to consider the appellant's other challenges to the administrative judge's findings on this point.

*The agency proved by clear and convincing evidence that it would have lowered the appellant's performance rating and suspended her in the absence of her protected disclosures.*

Regarding the first *Carr* factor and the appellant's lowered performance rating, the administrative judge found that the agency offered evidence supporting its decision. ID at 16-17. In reaching that finding, he relied upon the explanation of the appellant's former supervisor and rating official as to why he rated the appellant commendable in FY 2014, and lowered her rating in FY 2015 to fully successful. *Id.* In FY 2014, the rating official rated the appellant commendable in all performance elements, earning her a summary rating of commendable.[11] IAF, Tab 4 at 23. In FY 2015, he rated her commendable in three performance elements and fully successful in two performance elements, from which she earned enough points for a summary rating of fully successful. IAF, Tab 5 at 26.

On review, the appellant argues that her work product was outstanding, as shown by the seven statements from "high level directors" attesting to her performance in FY 2015, and so the agency failed to clearly and convincingly show that her performance was deserving of a performance rating less than commendable. PFR File, Tab 7 at 13-14. We agree that these statements show she performed at a high level, and her former supervisor expressly recognized her positive contributions by rating her commendable in three categories. IAF, Tab 43 at 62-66, Tab 70 at 191-202. Nevertheless, his decision to lower her rating to fully successful in the areas of "Individual Leadership" and "Customer Support" was supported by the record. He received several complaints from a manager about the appellant's conduct during meetings and other interactions indicating that she was increasingly challenging to work with, overstepped her boundaries, dominated meetings, and had difficulties working on a team. IAF, Tab 67 at 8-12. The appellant has provided no reason for discrediting the

---

[11] The agency rated the appellant on a five-tier scale with potential ratings, from lowest to highest, of unacceptable/unsatisfactory, marginal/minimally satisfactory, fully successful, commendable, and outstanding. IAF, Tab 4 at 18, 21.

veracity of the complaints and has set forth no persuasive argument for excluding them from consideration in her performance appraisal.

Regarding the appellant's 1-day suspension, the agency suspended the appellant based on one charge of improper conduct, supported by four specifications—one specification based on her failure to work at her assigned workstation and three specifications of sending inappropriate and highly critical emails concerning contractors' nonperformance. IAF, Tab 32 at 32-37. The administrative judge failed to consider that specification 2 was grounded in the appellant's protected disclosure. ID at 19-21. The specification was based on an email the appellant sent to agency officials that criticized Phacil for its nonperformance. IAF, Tab 32 at 32, Tab 42 at 7-18. The highly critical nature of the appellant's email is not unexpected and is insufficient to render her disclosure unprotected. *See Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1305-06 (Fed. Cir. 2006) (recognizing that a disclosure is not exempt from protection simply because it may have been presented in a critical manner). Thus, specification 2 cannot serve as evidence in support of the agency's burden of establishing that it would have disciplined the appellant for reasons unrelated to her protected disclosure. *Id.* at 1305 (finding that the agency failed to show by clear and convincing evidence that it would have disciplined the appellant absent his protected disclosures when those same disclosures served as the basis for the discipline); *see also Chambers v. Department of the Interior*, 602 F.3d 1370, 1380 (Fed. Cir. 2010) (stating that discipline may not be based on a protected disclosure). The critical question is whether the agency proved by clear and convincing evidence that it would have suspended the appellant for 1 day based on her misconduct as set forth in specifications 1, 3, and 4 alone. *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶¶ 8, 40 (2011) (assessing whether the agency would have removed an appellant for unauthorized release and disclosure of private and protected information based only his disclosures of

information that were not protected whistleblowing). We find that the agency met its burden.[12]

As to specification 1, the agency stated that the appellant had worked over 700 hours from an unauthorized location within the agency's headquarters. IAF, Tab 32 at 32. The appellant admitted that she was not working at her assigned workstation during those hours but rather in the lobby and cafeteria of the agency's headquarters. PFR File, Tab 7 at 17; ID at 21. Although the appellant argues that she was permitted to work in those other locations, PFR File, Tab 7 at 17-18, the administrative judge correctly found that the evidence supported the agency's contention that agency policy prohibited her from using those unapproved alternate worksites as her primary workstation. ID at 21; IAF, Tab 66 at 81-88 (deposition testimony of the appellant), Tab 67 at 13-14, 17-22, Tab 68 at 5-6, 12-13. The administrative judge also found that the agency provided evidence in support of specifications 3 and 4. ID at 21.

On review, the appellant argues that her emails were not improper, but rather were protected disclosures of wrongdoing that she was permitted to raise directly with the contractors. PFR File, Tab 7 at 18-20. However, as explained above, these disclosures were not protected. The appellant's former supervisor, who was the deciding official, emphasized that it was not within the appellant's job duties to supervise contractors and that, based on her improper communications, she risked binding the agency to unauthorized contractual obligations or exposing it to added liabilities. IAF, Tab 68 at 7. The appellant

---

[12] The appellant submits emails dated August to September 2016 regarding her oral reply and an undated instant message conversation with her former supervisor about properly recording her telework in the time and attendance system. PFR File, Tab 7 at 22-30. These documents, which are dated prior to the issuance of the initial decision, do not appear to be in the record below, and the appellant has not explained why she failed to submit them below. Under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). Thus, we decline to consider these documents.

also disputes that she admitted her emails were improper. PFR File, Tab 7 at 18-19. Regardless of the lack of admission, it is apparent, given the tone and content of the identified emails, that her conduct was improper. IAF, Tab 31 at 70-71, Tab 42 at 22-23, 27-30; *see Carr*, 185 F.3d at 1326 (observing that Federal whistleblower protections are "not meant to protect employees from their own misconduct"); *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 316 (1993) (recognizing that an agency is entitled to expect its employees to conform to certain accepted standards of civil behavior and decorum). In any event, the deciding official stressed that the agency was particularly concerned with time and attendance issues and that he would have suspended the appellant for 1 day based on specification 1 alone. IAF, Tab 68 at 6. Accordingly, the agency has submitted strong evidence showing that it would have suspended the appellant for 1 day even absent specification 2 and her other protected disclosures.

Regarding the second *Carr* factor, the administrative judge found that the appellant's former supervisor had no motive to retaliate against her. ID at 17. On review, the appellant argues that he had a motive to retaliate against her because he was implicated by her disclosures, given that he was the Branch Chief overseeing the Phacil contract in 2014. PFR File, Tab 7 at 14-15.

Agency officials may have a motive to retaliate even when they are not directly implicated by the disclosures, are not directly involved in the retaliatory actions, or are not personally named in the disclosure because the disclosure could reflect poorly on them in their capacity as managers and employees. *Whitmore*, 680 F.3d at 1370-72; *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 27 (2012). Although the appellant identifies evidence showing that Phacil was not performing to the terms of its contract in 2014, she has not identified any evidence in the record showing that her former supervisor was responsible for overseeing the Phacil contract in 2014, and thereby directly or indirectly implicated by her disclosures. PFR File, Tab 7 at 15; IAF, Tab 70 at 123. To the extent that the Phacil disclosures may have reflected poorly on the appellant's

former supervisor as a manager or employee, we find that her former supervisor had a strong motive to retaliate against her based on those disclosures. *See Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (considering under the second *Carr* factor whether there was a professional motive to retaliate); *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (addressing the second *Carr* factor consistent with *Whitmore* to find that the appellant's disclosures generally put higher-level management officials in a critical light by disclosing problems for which they were responsible); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 32-33 (2013) (finding that an appellant's disclosures of subordinate employees' wrongdoing created a motive to retaliate on the part of their first- and second-level supervisors).

The appellant does not argue that the Chief Investigator of WRD—the only official to whom she disclosed potential violations of the FLSA—had any motive to retaliate against her based on her disclosure. There is also no evidence in the record that the Chief Investigator influenced any of the officials responsible for taking any of the challenged personnel actions. However, the appellant does suggest that her former supervisor was implicated in the disclosure because he was aware that she was working excessive hours and permitted or encouraged her to do so. IAF, Tab 70 at 15-16, 30-31. Accordingly, to the extent that the appellant's disclosure of potential FLSA violations reflected poorly on her former supervisor, we find that the supervisor had a strong motive to retaliate. We modify the initial decision in this regard.

Further, the appellant argues that her former supervisor sent an email on April 14, 2016, showing that his decision to take "adverse actions" against the appellant was motivated by her protected disclosures. PFR File, Tab 7 at 15. In the email, he commented on a string of emails forwarded to him by a human resources employee from the appellant complaining about another supervisor's decision to move her to another shared office. IAF, Tab 70 at 231-42. The appellant does not allege that she exhausted that disclosure with OSC; therefore,

the Board lacks jurisdiction to consider it in connection with the instant IRA appeal. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011) (explaining that the Board may only consider those disclosures of information and personnel actions that the appellant raised before OSC). There is no indication that her former supervisor was discussing or otherwise referencing the appellant's protected disclosures. Accordingly, this email is not a basis for finding that her former supervisor had a motive to retaliate against her.

Finally, the administrative judge weighed the third *Carr* factor in the agency's favor. ID at 17, 21. As to her FY 2015 performance evaluation, the appellant does not dispute the administrative judge's findings that her former supervisor issued fully successful ratings to non-whistleblowers for FY 2015. ID at 16-17. As to her 1-day suspension, she argues that the comparators that the agency offered were not similarly situated because they engaged in more severe misconduct. PFR File, Tab 7 at 20-21. The U.S. Court of Appeals for the Federal Circuit clarified that employees may be similarly situated even if there are differences in the degrees of misconduct, but that such differences "should be accounted for" in "arriv[ing] at a well reasoned conclusion." *Whitmore*, 680 F.3d at 1373-74. With regard to the lowered performance rating, the agency offered evidence showing that the appellant's former supervisor rated eight of his twenty employees fully successful, five of whom were also GS-13 employees. ID at 17; IAF, Tab 68 at 9.

Thus, we agree with the administrative judge that the appellant's former supervisor rated non-whistleblowers the same as the appellant under similar circumstances. ID at 17. The agency also submitted a spreadsheet listing over 180 instances in which the agency proposed discipline for employees' time and attendance-related misconduct between 2013 and 2015. IAF, Tab 68 at 24, 27-45. Further, the agency submitted a declaration from the Chief Investigator of the WRD, in which he asserted under penalty of perjury that the agency "considered employees working from an unauthorized location to be absent without leave."

IAF, Tab 68 at 23. The agency also identified two employees that received more severe punishment for their time and attendance abuse—primarily for claiming time not worked. IAF, Tab 31 at 15-16. The evidence shows that the agency consistently punishes employees for time and attendance violations and issues proportionate punishment relative to the severity of the misconduct, regardless of their whistleblowing activities or lack thereof.

When balancing the three *Carr* factors, we find that the agency met its burden of proving by clear and convincing evidence that it would have lowered the appellant's performance rating and suspended her in the absence of her protected disclosures, even considering the presence of a strong retaliatory motive, because of the strength of the agency's evidence in support of its decisions and the comparator evidence presented. Accordingly, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[14]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_____

Gina K. Grippando

Gina K. Grippando
Clerk of the Board

Washington, D.C.